IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

KATHLEEN C. PEREA,

     Plaintiff,

vs.                                             No. CIV-13-00697 KG/LAM

JANIE S. CONNER and
STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

     Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER comes before the Court upon Plaintiff's Motion for a New Trial, filed

May 6, 2015.  (Doc. 458).  On June 1, 2015, Defendant Conner responded and Plaintiff replied

on June 15, 2015.  (Docs. 468 and 472).  Having considered Plaintiff's Motion for a New Trial,

the corresponding briefs, and the applicable law, the Court hereby denies Plaintiff's Motion for a

New Trial.

*I.  Background*

This diversity jurisdiction personal injury lawsuit arises out of a motor vehicle accident

that occurred in Santa Fe, New Mexico, on March 14, 2010.  Trial on the merits before a jury

commenced on April 13, 2015; and on April 21, 2015, the jury rendered its verdict for Defendant

Conner.  The Special Verdict Form in favor of Defendant Conner was entered on April 21, 2015.

(Doc. 456).

Plaintiff now moves for a new trial pursuant to Fed. R. Civ. P. 59.  (Doc. 458).  Plaintiff

asserts prejudicial error and seeks a new trial on the following alternative bases:  (1) the Court

erred in overruling Plaintiff's challenges for cause of jurors; (2) the Court erred in excluding the

Uniform Crash Report pursuant to Fed. R. Evid. 803(8); (3) the Court erred in denying Plaintiff's request to call a State Farm Insurance representative; (4) the Court erred in denying Plaintiff's request to call Arthur Bailey; and (5) the Court improperly instructed the jury.

## II.  Standard of Review

Fed. R. Civ. P. 59 governs motions for a new trial.   Rule 59 provides that, after a jury trial, a court may grant a new trial on some or all of the issues "for any reason for which a new trial has heretofore been granted in an action at law in federal court."  A new trial may be granted if prejudicial error has occurred. *Anderson v. Phillips Petroleum Co.*, 861 F.2d 631, 637 (10th Cir. 1988), *overruled on other grounds by Webb v. Level 3 Commc'ns, L.L.C.*, 167 Fed. Appx. 725 (10th Cir. 2006).  "In considering a motion for a new trial on the grounds of prejudicial error, the alleged trial court errors must be clearly erroneous, as well as prejudicial and must have affected the substantial rights of the parties." *Atencio v. City of Albuquerque*, 911 F. Supp. 1433, 1437 (D.N.M. 1995) (citing *Rasmussen Drilling, Inc. v. Kerr–McGee Nuclear Corp.*, 571 F.2d 1144, 1148–49 (10th Cir. 1978)); Fed. R. Civ. P. 61.

Whether to grant a new trial is a decision committed to the sound discretion of the district court. *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984).  Motions for a new trial are generally disfavored and should only be granted with great caution. *United States v. Mounkes*, 204 F.3d 1024, 1027–28 (10th Cir. 2000).  An alleged error by the trial court constitutes grounds for granting a new trial only where the trial court concludes that, absent the alleged error, a jury would likely have reached a contrary result. *McDonough Power Equip., Inc.*, 464 U.S. at 553–54.  The burden of showing clear error and prejudice to substantial rights rests with the party asserting error. *Blanke v. Alexander*, 152 F.3d 1224, 1236 (10th Cir. 1998).

## III. Discussion

As a preliminary matter, Plaintiff has not provided any citations to the record to facilitate the Court's analysis of Plaintiff's Motion for a New Trial.  The District of New Mexico Local Rules of Civil Procedure mandates that a party "must submit evidence . . . in support of allegations of fact."  D.N.M. LR-Civ. 7.3(b).

As noted earlier, Plaintiff filed the present motion on May 6, 2015.  At the time of Plaintiff's filing, the April 13–17, 2015, official trial transcripts were available on CM/ECF.  *See* (Docs. 437 and 445–448).  The remainder of the official trial transcript was filed on June 1, 2015.  *See* (Docs. 462, 464, and 467).  Despite the availability of the official trial transcript, Plaintiff did not attempt to cite to any specific portion of the record to support her arguments. Furthermore, Plaintiff did not move to file supplemental briefing once the complete trial transcript was available.  Hence, the Court is left without any guidance to search the entire 1,830 page trial transcript.  It is well-settled that "the district courts [] have a limited and neutral role in the adversarial process, and are wary of becoming advocates who comb the record of previously available evidence and make a party's case for it."  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998).  Therefore, where Plaintiff has failed to provide the Court with even the minimal factual citations necessary to the Court's analysis of the issues presented, the Court is under no obligation to comb the trial transcript; and the Court declines to do so.  As a result, Plaintiff's Motion for a New Trial is denied.

A.  *Plaintiff's Bases for a New Trial*

While the Court need not address Plaintiff's five post-trial arguments in light of the above ruling, the Court further finds that Plaintiff's Motion for a New Trial is without merit because Plaintiff has not established that the jury would likely have reached a contrary result if the

alleged errors had not occurred.  Plaintiff, moreover, has not demonstrated how the rulings prejudiced her substantial rights.

### 1.  *Jury Challenges for Cause*

Plaintiff asserts she was unfairly prejudiced and denied the right to a fair trial by the Court's failure to strike for cause Juror No. 9, Juror No. 10, Juror No. 12, Juror No. 17, and Juror No. 19.[1]  Plaintiff maintains that each juror unequivocally represented to the Court that he or she would not be able to return a verdict for $10 million, even if damages were proven.

Every litigant in a civil case has a right under the Due Process Clause to a trial before a fair and impartial jury "capable and willing to decide the case solely on the evidence before it." *Smith v. Phillips*, 455 U.S. 209, 217 (1982).  The district court must grant a challenge for cause if a prospective juror shows actual prejudice or bias.  *Vasey v. Martin Marietta Corp.*, 29 F.3d 1460, 1467 (10th Cir. 1994).  An actual bias is shown by the juror's admission of bias or "by proof of specific facts which show the juror has such a close connection to the facts at trial that bias is presumed." *Id.*  "A refusal to strike a juror for cause is committed to the discretion of the district court." *Watson v. Taylor*, 477 F. Supp. 2d 1129, 1137 (D. Kan. 2007) (citing *Vasey*, 29 F.3d at 1467).

Notably, Plaintiff did not challenge Juror No. 10 or Juror No. 12 for cause.  *See* (Doc. 467) at 82–87.  The fact that Plaintiff did not challenge Juror No. 10 and Juror No. 12 for cause "is strong evidence that [she] was convinced the jurors were not biased and has not formed any opinions" as to either party or damages.  *Beck v. Washington*, 369 U.S. 541, 558 (1962).  As a result, the Court is strongly inclined to find that Plaintiff's right to a fair trial was not prejudiced.

---

[1]  In the briefs, the parties refer to the contested jurors by their respective three-digit identification number generated by the Clerk's office as provided on the jury questionnaire forms.  Juror No. 9 is identified as Juror 632; Juror No. 10 is identified as Juror 537; Juror No. 12 is identified as Juror 581; Juror No. 17 is identified as Juror 615; and Juror No. 19 is identified as 595.  For consistency, the Court will refer to each disputed juror by their *voir dire* seating number:  9, 10, 12, 17, and 19—as is used in the Court's *voir dire* transcript.  *See* (Doc. 467).

Assuming *arguendo*, that Juror No. 10 or Juror No. 12 evidenced bias or prejudice during *voir dire*, the record clearly demonstrates that all of the contested jurors were rehabilitated.

At the beginning of *voir dire*, the Court read the Joint Statement of the Case to the prospective jurors.  (Doc. 467) at 22.  Subsequently, the Court asked the prospective jurors whether they harbored any bias or prejudice, either for or against the parties in this case.  *Id.* at 22–24.  None of the contested jurors responded affirmatively.  *See id.* at 24–26.  The Court then inquired as to whether the prospective jurors could not render a fair and impartial verdict.  *Id.* at 26.  None of the prospective jurors responded.  *Id.*  James Wood (Mr. Wood), counsel for Plaintiff then asked the jury panel, as a whole, whether the jurors could award $10 million if the evidence proved Plaintiff's case.  *Id.* at 45–46.  The Court recognizes that Juror Nos. 9, 10, 12, 17, and 19 stated individually that they thought $10 million was excessive and could not award $10 million.  *See id.* at 47, 49–51.

In response, Ann Keith (Ms. Keith), counsel for Defendant Conner, assiduously rehabilitated the contested jurors.  In particular, Ms. Keith asked the contested jurors whether they could reach a verdict on the evidence and not his/her personal feelings; whether he/she could follow the Court's instructions and listen to all of the evidence; and whether he/she could be fair and impartial to both parties.  *Id.* at 65–67.  The contested jurors responded affirmatively. *Id.*  Based on the jurors' responses, the Court found that the jurors were rehabilitated and appeared impartial.  *Id.* at 82–87.

As a practical matter, it is difficult to comprehend how Plaintiff can assert prejudice with respect to damages when the jury never reached the issue of damages.  *See Watson*, 477 F. Supp. 2d at 1138 (plaintiff not materially prejudiced on damages when defense verdict on threshold issue of liability).  The Court, nevertheless, finds that the record demonstrates that the contested

jurors were rehabilitated and not impartially prejudiced against Plaintiff with regard to her

damages.  *See Sawyer v. S.W. Airlines Co.*, 2005 WL 1910800, at *2 (10th Cir. 2005) (finding no

error when district court found "jurors appeared candid and impartial").   Therefore, Plaintiff has

not shown clear error and prejudice to her right to a fair trial.

### 2.  *Uniform Crash Report*

Plaintiff contends that Officer Bryan Waller's (Officer Waller) Uniform Crash Report

should have been admitted as a public record pursuant to Fed. R. Evid. 803(8).  Plaintiff claims

that the Court's exclusion of the Uniform Crash Report prejudiced Plaintiff because it denied her

an opportunity to present evidence that Defendant Conner entered the intersection without

knowing the color of the traffic light.

A party's "right to impeach a witness is basic to a fair trial."  *Mac Tyres, Inc. v. Vigil*,

1979-NMSC-010 ¶ 14, 589 P.2d 1037, 1039; *see also Fisher v. Shamburg*, 624 F.2d 156, 162

(10th Cir. 1980) ("The right to confront, cross-examine and impeach adverse witnesses is one of

the most fundamental rights sought to be preserved by the Seventh Amendment provision for

jury trials in civil cases." (c*iting Adickes v. Kress & Co.*, 398 U.S. 144, 176 (1970) (Black, J.,

concurring))).

In its April 8, 2015, Order Regarding Pending Pre-Trial Motions (Order), the Court

denied Plaintiff's motion in *limine* to admit Officer Waller's Uniform Crash Report.  (Doc. 427)

at 2–3.  The Court specifically found that state law governed the admissibility of the Uniform

Crash Report.  *Id.* at 2.  Applying state law, in particular NMSA 1978, § 66-7-213(B), the Court

held the Uniform Crash Report was inadmissible.  *Id.* at 2–3.  The Court's analysis, however,

also considered whether the Uniform Crash Report was admissible as a public document under

Fed. R. Evid. 803(8).  *Id.* at 3.  The Court found that the Uniform Crash Report lacked the

requisite trustworthiness under Fed. R. Evid. 803(8) and, thus, was not admissible as a public record. *Id.* The Court also held in abeyance its determination of whether Defendant Conner's hearsay statement within the report was admissible. At trial, Officer Waller testified that Defendant Conner told him that "she was unsure of what color the light was" when she traveled through the intersection. (Doc. 437) at 37:21–22.

Based on the Court's April 8, 2015, Order, the Court is unpersuaded that its decision to exclude the Uniform Crash Report—under either state or federal law—was clearly erroneous. In addition, the Court finds that it did not unfairly prejudice Plaintiff because Plaintiff elicited testimony from Officer Waller contradicting Defendant Conner's testimony regarding the color of the traffic light.

### 3. *Testimony of the State Farm Insurance Representative*

Plaintiff asserts that the Court should have allowed her to call a State Farm Insurance representative to impeach Defendant Conner. Specifically, Plaintiff sought to introduce testimony that Defendant Conner told an insurance agent that she did not know the color of the traffic light when she entered the intersection. Plaintiff acknowledges that Defendant Conner made a similar statement to Officer Waller.

As discussed *supra*, Plaintiff has a fundamental right to impeach Defendant Conner. The Court, nonetheless, has a great deal of discretion when evaluating whether to exclude evidence of insurance when the probative value of such evidence is substantially outweighed by the danger of unfair prejudice. *Mac Tyres, Inc.*, 1979-NMSC-010 ¶ 12, 589 P.2d at 1039.

In this case, as noted earlier, Officer Waller testified that Defendant Conner told him that she did not know the color of the light when she drove through the intersection. (Doc. 437) at 37:21–22. It was within the purview of the jury, after hearing Officer Waller's and Defendant

Conner's testimony, to evaluate the credibility of each witness and weigh the evidence.  *See*

*White v. Conoco, Inc.*, 710 F.2d 1442, 1443 (10th Cir. 1983) (jurors charged with exclusive duty

of assessing credibility of witnesses).  Moreover, in light of Officer Waller's testimony, any

probative value of a State Farm Insurance representative's testimony was outweighed by a

presentation of cumulative evidence.  Additionally, the Court stands by its prior ruling that the

probative value of the testimony was substantially outweighed by the danger of unfair prejudice

of injecting insurance into the trial.  *See* Fed. R. Evid. 411 (evidence of liability insurance may

be admitted only for proper purpose).  Consequently, the Court's ruling to exclude a State Farm

Insurance representative's testimony did not prejudice Plaintiff's right to impeach Defendant

Conner.

### 4.  *Testimony of Arthur Bailey*

Plaintiff argues that the Court erred when it denied Plaintiff the opportunity to call Arthur

Bailey as a rebuttal witness to clarify "highly prejudicial misrepresentations" of Plaintiff's

counsel.  In support of her contention, Plaintiff cites *Whittenburg v. Werner Enters. Inc.*, 561

F.3d 1122 (10th Cir. 2009).  Plaintiff also claims that defense counsel's questioning of Dr. Steve

Martinez (Dr. Martinez), opened the door to Mr. Bailey's testimony in order to dispel any

confusion regarding Plaintiff's attorneys' integrity.

A district court has broad discretion to admit or exclude rebuttal evidence.  *United States*

*v. Olivo*, 80 F.3d 1466, 1470 (10th Cir. 1996).  When the plaintiff seeks "to rebut defense

theories which [she] knew about or reasonably could have anticipated, the district court is within

its discretion in disallowing rebuttal testimony."  *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1224

(10th Cir. 2000) (citations omitted).  Moreover, whether an attorney's alleged egregious

misconduct warrants a new trial is committed to the sound discretion of the district court.

*Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957, 962 (10th Cir. 1993).

On April 17, 2015, during cross-examination, defense counsel asked Dr. Martinez,

Plaintiff's Psychologist, the following questions:

> Q. Periodically, through the life of this case, you have prepared periodic status reports?
> A. Yes.
> Q. Sure.  Is it true that you would send those reports to Mrs. Perea's attorney and ask him to review and make any changes or suggestions for changes which he felt were appropriate?
> A. Suggestions for additional information that he might feel was appropriate --
> Q. In fact —
> A. — or clarification.
> Q. In fact, he did do that?
> A. Yes.
> Q. Don't you feel that your records should be just your records?
> A. They are my records.  Both statements are my records.
> Q. Was Mrs. Perea's attorney also a psychologist?
> A. No.
> Q. Why, then, would you have a lawyer be reviewing your psychological records to make suggestions for their content?
> A. To make sure that they were complete for his needs.
> Q. Isn't the point of your creation of records to document your care for the patient?
> A. The needs of her attorney and her needs are not mutually exclusive from one another.  They can be identical 100 percent.
> Q. Well, as a professional, aren't you supposed to have your own— aren't you supposed to author your own records and your own observations?
> A. I did.
> Q. Yet, you changed your reports based on comments from Mrs. Perea's attorney. Is that right?
> A. I did not change my reports.  I clarified previous statements.

(Doc. 448) at 225–27.  During this line of questioning Plaintiff did not object; nor did Plaintiff

address Dr. Martinez's responses on redirect.  *See id.* at 225–50.

On April 20, 2015, in light of the aforementioned questioning, Plaintiff's counsel

requested that the Court allow Plaintiff to call Arthur Bailey (Mr. Bailey), Plaintiff's insurance

settlement attorney.  (Doc. 464) at 4.  Plaintiff proffered that Mr. Bailey would testify about e-

mail communications between Mr. Bailey and Dr. Martinez regarding Plaintiff's medical conditions for purposes of insurance negotiations.  *Id.* at 5.  Plaintiff's counsel further stated that he did not object to the line of questioning because any objection would have drawn further attention to the questioning.  *Id.* at 290.  Plaintiff's counsel also informed the Court that counsel did not explore Dr. Martinez's responses on redirect because counsel required the e-mail documentation from Mr. Bailey.  *Id.* at 7.  Plaintiff's counsel then disclosed to the Court that Mr. Bailey's and Dr. Martinez's e-mail communications were stipulated exhibits, but were withdrawn prior to the commencement of the trial.  *Id.* at 289.

Based on the foregoing, the Court denied Plaintiff's request to call Mr. Bailey as a rebuttal witness.  *Id.* at 297.  In its ruling, the Court found relevant the fact that Plaintiff failed to raise any objection to defense counsel's questioning before Dr. Martinez was excused.  *Id.* at 295.  The Court further found that Dr. Martinez unmistakably testified that he did not change his reports, but rather, clarified the medical "records that would ultimately be used by counsel."  *Id.* at 296.  Next, the Court found that any probative value of Mr. Bailey's testimony was substantially outweighed by the danger of confusing the jury and inserting insurance into the trial.  *Id.*  Finally, the Court noted "that the jury has been, and will continue to be, instructed that statements, questions, arguments of counsel are not evidence, including the questions by [defense counsel] during this exchange."  *Id.* at 297.

In light of the above record, the Court remains unpersuaded that Plaintiff suffered any unfair prejudice due to the Court's denial to call Mr. Bailey as a rebuttal witness.  The Court first finds that Plaintiff was on notice with respect to the e-mail communications between Dr. Martinez and Mr. Bailey, as those documents were initially stipulated exhibits.  Thus, Plaintiff could have tailored redirect to clarify the email correspondence without raising the issue of

10

insurance.  More importantly, the Court finds it is significant that Plaintiff never objected to the

testimony elicited on cross-examination or attempted to cure any alleged prejudice during

redirect.  *See Koch*, 203 F.3d at 1225 (finding no error because plaintiffs failed to object).  For

this reason, the Court also finds *Whittenburg* distinguishable from this case on the facts.  In

*Whittenburg*, the defendant's counsel repeatedly objected to improper and prejudicial statements

during closing arguments.  561 F.3d at 1127.  Here, Plaintiff's counsel did not timely object.

Furthermore, the Court still finds that any probative value of Mr. Bailey's testimony was

outweighed by the danger of confusing the jury as Plaintiff did not clarify Dr. Martinez's

testimony on redirect; and the danger of injecting insurance into the litigation.  Finally, the Court

finds any alleged prejudice does not warrant a new trial because the Court instructed the jury that

counsel's statements, questions, and arguments are not evidence.  (Doc. 452) at 24, 45; *see also*

*United States v. Coleman*, 7 F.3d 1500, 1506 (10th Cir. 1993) ("A principal tenet of

jurisprudence is that jurors are presumed to follow the law.").

### 5.  *Jury Instructions*

Plaintiff contends the Court erred in declining to give Plaintiff's proposed UJI 13-302B

instruction and in giving instructions pertaining to justification or excuse.

"A determination of the substance of a jury instruction in a diversity case is a matter of

state law, while the grant or denial thereof is a matter of procedure controlled by federal law.

Further, the question of whether an incorrect instruction given in a diversity case is prejudicially

erroneous is governed by federal procedural law."  *Gomez v. Martin Marietta Corp.*, 50 F.3d

1511, 1517 (10th Cir. 1995) (citation omitted).  The decision of whether to give or exclude a

particular jury instruction is committed to the sound discretion of the district court.  *City of*

*Wichita, Kan. v. U.S. Gypsum Co.*, 72 F.3d 1491, 1495 (10th Cir. 1996).  In reviewing jury

instructions, the Court "examines the record as a whole to determine whether the instructions

state the applicable law and provide the jury with an appropriate understanding of the issues and

the legal standards to apply.  No particular form of words is essential if the instruction as a whole

conveys the correct statement of the applicable law.  An erroneous jury instruction requires

reversal only if [there is] substantial doubt whether the instructions, taken together, properly

guided the jury in its deliberations."  *Gomez*, 50 F.3d at 1517 (citation and quotation omitted).

> ### a.  *Plaintiff's Proposed UJI 13-302B Instruction*

Relying on New Mexico Uniform Jury Instruction 13-302B, Plaintiff proposed the

following instruction:

> To establish negligence on the part of Defendant, Plaintiff has the burden of
> proving at least one of the following:
>
> 1.  Defendant entered an intersection without knowing whether she had a
>     green light or the right of way;
> 2.  Defendant ran a red light;
> 3.  Defendant failed to yield the right of way to cross traffic at a red light;
> 4.  Defendant failed to make a right turn at a malfunctioning red light; or
> 5.  Defendant failed to maintain a proper lookout for Plaintiff's vehicle.
>
> Plaintiff has the burden of proving that such negligence was a cause of the injuries
> and damages.

(Doc. 360) at 2.  Plaintiff claims that she was prejudiced because the jury found for Defendant

Conner on the issue of liability without properly being instructed on Plaintiff's breach of duty

contentions.  Plaintiff further asserts that her factual contentions were supported by the evidence.

At trial, the Court declined to give Plaintiff's proposed UJI 13-302B instruction.  The

Court reasoned that Plaintiff's factual contentions were too detailed, repetitive, and, more

importantly, included facts that were to be argued to the jury—which is inappropriate in a UJI

13-302B instruction.  The Court cited *Allen v. Tong*, 2003-NMCA-056 ¶ 25, 133 N.M. 594, 602,

in support of its ruling.  The Court concluded that in order to fairly and clearly describe the

alleged acts that establish a breach of duty, the following consolidated instruction was

appropriate:

> To establish negligence on the part of Defendant, Plaintiff has the burden of proving at least one of the following:
>
>   1. Defendant failed to yield the right-of-way at a red light;
>   2. Defendant failed to use ordinary care to prevent the accident;
>   3. Defendant failed to keep a proper lookout so as to avoid placing herself or others in danger and to prevent the accident; or
>   4. Defendant failed to maintain proper control of her vehicle so as to avoid placing herself or others in danger and to prevent the accident.
>
> Plaintiff has the burden of proving that such negligence was a cause of the injuries and damages.

(Doc. 452) at 5.

Upon review of the jury instructions as a whole, the Court finds the instructions properly

stated the law and gave the jury sufficient information as to Plaintiff's factual contentions

establishing a breach of duty.  Specifically, Plaintiff's proposed scenarios 1, 2, 3, and 4 are

redundant detailed examples of how "Defendant failed to yield the right-of-way at a red light."

Moreover, as Plaintiff illustrates in her motion, Officer Waller's, Bobby Gallegos', Rick

Devine's, and Margaret Jordan's testimony supported the contention that Defendant Conner may

have failed to yield at a red light.  Further, as Defendant Conner correctly notes in her response

brief, Plaintiff's proposed scenario 4 was not consistent with the evidence as Plaintiff did not

proffer any evidence that Defendant Conner attempted to make a right-hand turn.  *See* (Doc. 445)

at 170.  Finally, subsection four of the Court's instruction is consistent with Plaintiff's proposed

scenario 5 and New Mexico law.  *See* UJI 13-1202 NMRA 2015.  Consequently, the Court's

instruction adequately covers the issues presented by the evidence and accurately states the law.

Accordingly, there is no prejudice to Plaintiff.

### b.  *Jury Instructions Regarding Justification or Excuse*

13

Plaintiff argues the Court erred in including justification and excuse instructions because there was no evidence that a force beyond Defendant Conner's control caused her to violate the statute. Plaintiff, in particular, takes issue with Jury Instruction No. 6, Jury Instruction No. 17, and Jury Instruction No. 18. Plaintiff maintains that she was prejudiced because the inclusion of justification or excuse in the aforementioned instructions injected false issues into the trial.

Jury Instruction No. 6 (the instruction regarding Defendant Conner's affirmative defenses), provides the following relevant language: "To establish that any violation of a statute by Defendant was excused or justified, Defendant has the burden of proving that Defendant did that which might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law." (Doc. 452) at 7. Jury Instruction No. 17 (the negligence *per se* instruction) states, in the entirety:

> There was a statute in force in this state, at the time of the occurrence in question, which provided that:
>
> > The driver of any vehicle shall obey the instructions of any official traffic-control device, unless otherwise directed by a traffic or police officer.
>
> If you find from the evidence that Defendant violated this statute, then Defendant's conduct constitutes negligence as a matter of law, unless you further find that such violation was excusable or justified.
>
> To legally justify or excuse a violation of a statute, the violator must sustain the burden of showing that she did that which might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law.

*Id.* at 18.

In this case, the parties presented conflicting evidence as to whether Defendant Conner failed to yield the right-of-way at a red traffic signal. As addressed earlier, Officer Waller's, Bobby Gallegos', Rick Devine's, and Margaret Jordan's testimony corroborated Plaintiff's contention that the traffic signal was either red when Defendant Conner entered the intersection

14

or immediately thereafter.  *See* (Doc. 445) at 161–64 (summarizing prior testimony).

Conversely, Defendant Conner testified that the traffic signal was red when she stopped at the

intersection, but after a long period of time, the light turned green before she entered the

intersection.  *Id.* at 169–70.  Both parties also presented evidence regarding the weather

conditions prior to, during, and after the accident.  For example, Defendant Conner testified that

due to a "white-out" there was "very poor visibility" and a "heavy fog" prior to and at the time of

the accident.  *Id.* at 166–68.  Defendant Conner further testified that she drove "very slowly"

through the intersection.  *Id.* at 171.

        In light of the record, the Court finds that Jury Instruction No. 6 and Jury Instruction No.

17 were adequately supported by the evidence presented in this case.  Particularly, the evidence

supported Defendant Conner's theory that she was present in the intersection at the time of the

accident due to a delayed traffic signal and/or weather conditions.  It is within the purview of the

jury to determine whether these facts excused Defendant Conner's violation of a statute.  *See*

*United States v. Keck*, 643 F.3d 789, 793 (10th Cir. 2011) (purview of jury "to resolve

conflicting testimony, weigh the evidence, and draw inferences from the facts presented");

*Whitfield Tank Lines, Inc. v. Navajo Freight Lines, Inc.*, 1977-NMCA-052 ¶ 17, 564 P.2d 1336,

1340 (excuse or justification instruction proper when evidence supports party's theory).

Therefore, the inclusion of excuse or justification in Jury Instruction No. 6 and Jury Instruction

No. 17 did not constitute prejudicial error.

        Finally, the Court finds no prejudicial error with respect to the excuse or justification

language in Jury Instruction No. 18.  Plaintiff contends that the Court erroneously instructed the

jury as to Defendant Conner's justification or excuse of a statutory violation.  The plain language

of Jury Instruction No. 18, however, clearly pertains to Plaintiff's justification or excuse for a

statutory violation.  There is nothing in Jury Instruction No. 18 that can reasonably be inferred as

associating justification or excuse to Defendant Conner.  Therefore, Plaintiff has not

demonstrated how she was prejudiced by the Court's instruction.

      IT IS, THEREFORE, ORDERED that Plaintiff's Motion for a New Trial (Doc. 458) is

DENIED.


                                        _____

                                     UNITED STATES DISTRICT JUDGE